UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ELADIO CRUZ, Individually and      CIVIL ACTION
on behalf of his Minor Child,
Melissa Cruz      NO. 14-2015

V.      SECTION "F"

TRACY FULTON, PAUL DIMITRI,
and THE CITY OF NEW ORLEANS

<u>ORDER AND REASONS</u>

Before the Court are two motions: 1) Paul Dimitri's partial motion to dismiss pursuant to Rule 12(c) and partial motion for summary judgment based on qualified immunity; and 2) the City of New Orleans' partial motion to dismiss pursuant to Rule 12(c) and partial motion for summary judgment. For the reasons that follow, Dimitri's motion is GRANTED; the City's motion is GRANTED IN PART and DENIED IN PART.

**Background**

This lawsuit arises from a traffic accident turned violent in an encounter between an off-duty New Orleans police officer and the plaintiff, Eladio Cruz.

Cruz was driving his vehicle on Earhart Boulevard in New Orleans on his way home from the grocery store. His wife and two daughters were in the car. As they approached a traffic light, Cruz moved into the far left turning lane at the intersection. He heard the driver of a black vehicle in the lane next to him honk the horn. While Cruz was stopped at the intersection waiting for

1

the light to change, he saw the black vehicle change lanes and pull up behind him. A man got out and approached the family vehicle. The man was Tracy Fulton, an off-duty NOPD officer.

Fulton walked alongside the vehicle and tried to open the driver's side door where Cruz was sitting. Cruz was able to lock the door in time to stop him. Fulton then turned to the back door where Cruz's daughter was sitting. Fulton opened the door, apparently yelling expletives at the family. The light turned green and Cruz drove away. Fulton followed.

The family arrived at home a few blocks away and parked the car in the driveway. As Cruz began unloading groceries from the back of the pickup truck, he noticed Fulton walking toward him. Fulton grabbed Cruz by the shirt; Cruz tried to escape the grip by slapping Fulton's hands away. Fulton struck Cruz hard in the face, knocking him to ground. While Cruz lay dazed on the ground Fulton kicked him in the stomach, allegedly repeating derogatory comments.

Cruz was able to stand up and move toward his pick-up truck. He reached in the bed of the truck and pulled out a machete that he used for yard work, hoping to scare Fulton away. Instead, Fulton pulled out pistol and pointed it at Cruz, threatening to shoot him. Cruz's 13 year old daughter stood in front of her father in the line of fire, pleading with Fulton not to shoot. Cruz gave the machete to his daughter and told her to go inside and call the

2

police. She called 911 and told the operator that a man was pointing a gun at her father and threatening to shoot him.

At the same time, Fulton returned to his car and called the police. He identified himself as a police officer and requested assistance. He told the dispatcher that a male suspect had hit his vehicle on Earhart Boulevard and then fled the scene. Fulton claimed that he followed the suspect home and confronted him, but the man pulled out a machete. He gave the dispatcher Mr. Cruz's address.

NOPD Officer, Paul Dimitri, also a defendant in this case, responded to the call. He interviewed Fulton, who repeated his story that Cruz had committed a hit-and-run. Dimitri claims that he inspected the two vehicles and observed a paint transfer, corroborating Fulton's hit-and-run account. He also claims that he interviewed Cruz's family, who denied that they had hit Fulton's car. Based on his observations, Dimitri concluded that Cruz was at fault. Dimitri issued Cruz traffic citations for careless operation of a vehicle, driving without a license, and hit-and-run.

Cruz was then taken to the hospital. Medical records indicate that his nose was fractured and swollen. Cruz also complained of pain to his stomach where Fulton had kicked him. He reported severe pain in his face, ear, and jaw, where Fulton had punched him.

Officers from the NOPD's Public Integrity Bureau also reported to the scene. They opened a criminal investigation into the incident. After interviewing Cruz and his family members, the officers ultimately arrested Fulton on charges of second degree battery.

Officer Dimitri documented the incident in a police report. According to Cruz, Dimitri attempted to help Fulton avoid criminal and civil liability by omitting facts from the report and fabricating the traffic violations. Apparently, there is no mention in the report that Fulton attacked Cruz or pulled out his pistol.[1] The report also allegedly states that Cruz was transported to the hospital for "an unrelated medical complaint."

Cruz filed this lawsuit seeking damages for violations of his constitutional rights under 42 U.S.C. §§ 1983 and 1985(3). He contends that Fulton and Dimitri conspired to deprive him and his daughter of their constitutional rights on account of their ethnicity as Hispanics. Cruz also names the City of New Orleans as a defendant, asserting theories of direct liability and respondeat superior (vicarious liability). He lists numerous state and federal violations that each of the three defendants allegedly committed.

---

[1] Officer Dimitri's report is not attached to the plaintiff's complaint, nor could the Court locate the report among the hundreds of unlabeled pages the plaintiff attached to his opposition papers.

Paul Dimitri and the City of New Orleans move for summary judgment and dismissal. Dimitri invokes the defense of qualified immunity and moves for partial dismissal under Rule 12(c) of the Federal Rules of Civil Procedure and partial summary judgment. The City of New Orleans also moves for summary judgment and dismissal under Rule 12(c). The Court considers each of the defendant's motions separately.[2]

## I. Paul Dimitri

Officer Paul Dimitri styles his motion as one for partial dismissal under Rule 12(c) and partial summary judgment. Underlying both theories is his invocation of qualified immunity. With regard to his Rule 12(c) motion, Dimitri contends that Cruz has failed to allege sufficient facts to establish that Dimitri was objectively unreasonable. As for his motion for partial summary judgment, Dimitri submits that Cruz has failed to create any genuine issue of material fact as to both the viability of his claims and the inapplicability of qualified immunity. The Court considers each partial motion separately.

### A.

"The standard for dismissal under Rule 12(c) is the same as that for dismissal to state a claim under Rule 12(b)(6)." Johnson

---

[2] The Court notes, however, that the defendants do not distinguish in their disorganized briefs the grounds on which they move for summary judgment from the grounds they seek dismissal under Rule 12(c). As a result, the Court must infer.

v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). The Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Iqbal, 556 U.S. at 678-79. A corollary: legal conclusions "must be supported by factual allegations." Id. at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678-79)(internal quotation marks omitted). "A claim has facial plausibility when the plaintiff

6

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Compounding the federal pleading standard in this case is Dimitri's assertion of qualified immunity.

### 1.

When a plaintiff seeks money damages from government officials for alleged violations of constitutional or statutory rights, officials sued in their individual capacities may invoke the defense of qualified immunity. Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam).

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was

clearly established at the time of the challenged conduct."
Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v.
al-Kidd, 563 U.S. 731, 735 (2011); Harlow v. Fitzgerald, 457 U.S.
800, 818 (1982)(This doctrine protects government officials
against individual civil liability "insofar as their conduct does
not violate clearly established statutory or constitutional rights
of which a reasonable person would have known."). "Qualified
immunity balances two important interests – the need to hold public
officials accountable when they exercise power irresponsibly and
the need to shield officials from harassment, distraction, and
liability when they perform their duties reasonably." Pearson v.
Callahan, 555 U.S. 223 (2009)(noting that "[t]he protection of
qualified immunity applies regardless of whether the government
official's error is 'a mistake of law, a mistake of fact, or a
mistake based on mixed questions of law and fact.'"). Indeed,
"[q]ualified immunity represents the norm" and "is designed to
shield from civil liability all but the plainly incompetent or
those who violate the law." Brady v. Fort Bend County, 58 F.3d
173, 174 (5th Cir. 1995).

In resolving a government official's qualified immunity
defense, courts have traditionally applied the two-prong process
articulated in Siegert v. Gilley, 500 U.S. 226 (1991), and
confirmed by the Supreme Court again in Saucier v. Katz, 533 U.S.
194 (2001). First, the Court must determine whether the plaintiffs

8

have shown a violation of a constitutional right.  Id. at 201.
The second inquiry requires the Court to consider "whether the
right at issue was 'clearly established' at the time of the
defendant's alleged misconduct."  Pearson v. Callahan, 555 U.S.
223 (2009).  Although the Supreme Court has left to the district
court's discretion the sequence for undertaking these two
inquiries, the Supreme Court has increasingly indicated a
preference for first considering whether a purported right was
clearly established by prior case law "without resolving the often
more difficult question whether the purported right exists at all."
See Reichle, 132 S.Ct. at 2093 ("This approach comports with our
usual reluctance to decide constitutional questions
unnecessarily."); see also Pearson, 555 U.S. at 238-39 (listing
circumstances in which courts might be best served to bypass the
first step of the Saucier process, such as "when qualified immunity
is asserted at the pleadings stage, the precise factual basis for
the plaintiff's claim or claims [is] hard to identify").

     Step two of the qualified immunity analysis requires courts
to determine whether the defendants' conduct "was objectively
reasonable in light of clearly established law."  Thompson v.
Upshur County, Tex., 245 F.3d 447, 457 (5th Cir. 2001)(citations
omitted).  "Fair warning" is the touchstone of this analysis.  Bush
v. Strain, 513 F.3d 492, 501-02 (5th Cir. 2008)(citations omitted).
"In other words, 'existing precedent must have placed the statutory

or constitutional question beyond debate.'" Reichle, 132 S.Ct. at 2093 (quoting Camreta v. Greene, 563 U.S. 692 (2011)).

Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is unavailable. See Collier v. Montgomery, 569 F.3d 214, 217-18 (5th Cir. 2009); see also McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). "Although qualified immunity is 'nominally an affirmative defense," the plaintiff bears a heightened pleading burden 'to negate the defense once properly raised.'" Newman v. Guedry, 703 F.3d 757, 761 (5th Cir. 2012)(citing Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)). A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation. James v. Texas Collin Co., 535 F.3d 365, 373 (5th Cir. 2008).

2.

Officer Dimitri contends that the plaintiff has failed to allege sufficient facts in the complaint to show that he violated a clearly established constitutional right.

Cruz's account of the incident is fact specific. He pleads that Officer Dimitri acted in concert with Fulton to fabricate traffic charges and omit key facts from the police report to cover up Fulton's illegal and violent behavior. Cruz contends that Dimitri ignored the eye witness accounts of Cruz's family, who

10

denied that Cruz's vehicle ever made contact with Fulton's and
cited Cruz for traffic violations without the requisite probable
cause. The plaintiff speculates that Dimitri agreed to issue the
traffic citations so city prosecutors could later offer to dismiss
the charges in exchange for Cruz's agreement to release Fulton and
the City of New Orleans from liability arising from the incident.
According to the plaintiff, Dimitri failed to mention in his police
report any facts about the violent encounter initiated by Fulton,
including the fact that Fulton drew his pistol.

Cruz also lists specific "negligent and intentional acts of
the defendant Dimitri":

a.    Intimidation by an officer;

b.    Imprudence or want of skill;

c.    Failing to report true, accurate, and/or correct
      information to NOPD regarding the incident;

d.    Intentionally placing false information in a police
      report;

e.    Conspiracy to deprive plaintiff and Melissa Cruz of
      their   civil   and   constitutional   rights   and
      conspiracy to impede or prevent them from the
      exercise of those rights; and

f.    Violation of plaintiff Cruz's and Melissa Cruz's
      constitutional rights and civil rights under the
      United States Constitution and the Louisiana State
      Constitution, as well as State and federal laws,
      including but not limited to 42 U.S.C. § 1983, et
      seq.

Dimitri addresses each of these specific charges.

11

First, Dimitri provides the statutory requirements to make out a claim for intimidation by an officer:

> A. Intimidation by officers is the intentional use, by any police officer or other person charged with the custody of parties accused of a crime or violation of a municipal ordinance, of threats, violence, or any means of inhuman treatment designed to secure a confession or incriminating statement from the person in custody.

La. R.S. § 14:40. Dimitri is correct that the plaintiff has not pled any facts tending to show that Dimitri threatened Cruz or his family, acted violently toward them, or treated them inhumanely. Cruz has failed to state a claim against Dimitri for intimidation by an officer.

Dimitri next addresses the claim that he failed to report accurate information to the NOPD and falsified a police report. Dimitri invokes the Fifth Circuit decision in Smith v. Patri, 99 Fed. Appx. 497, 498 (5th Cir. 2004), in which the Court found that "there is no right to a completely accurate police report." More pointedly, Dimitri relies on the First Circuit case, Landrigan v. City of Warwick, 628 F.2d 736 (1st Cir. 1980). There, the First Circuit held that "the mere filing of the false police reports, by themselves and without more, did not create a right of action in damages under 42 U.S.C. § 1983." Id. at 745. The court reasoned that the focus "should be on the consequences, if any, not on the mere existence of the report." Id. Similarly, the Eighth Circuit dismissed a section 1983 action based on a law enforcement

official's deliberate filing of a false accident report. <u>Shock v. Tester</u>, 405 F.2d 852 (8th Cir. 1969). The court reasoned that the plaintiff failed to allege how any deprivation of life, liberty, or property flowed from the officials' actions, and the false report.

Without deciding whether a constitutional right against a false police report exists, Dimitri has offered sufficient support to show that any such right, in and of itself, is not clearly established. Here, the dispositive question is whether the plaintiff suffered any consequences implicating his constitutional rights as a result of the false report. Cruz does not allege that he was deprived of life, liberty, or property as a result of Dimitri's report. Nor do the facts support that conclusion. To the contrary, Cruz was never formally arrested or detained, he was acquitted of all charges, and importantly, Fulton was arrested for battery. On this record, Dimitri's report (which the plaintiff has conspicuously fails to identify) is of no consequence; it was effectively superseded by the Public Integrity Bureau's report, which is consistent with Cruz's account of the facts and which formed the basis for Fulton's arrest. Cruz has failed as a matter of law to state a claim under Section 1983 for a deprivation of his constitutional rights as a result of a false police report.

The more relevant question is whether Dimitri violated Cruz's constitutional right to be free from arrest without warrant or

probable cause. Because both parties rely on evidence outside of the pleadings to support their positions, the Court construes the remainder of Dimitri's motion as one for summary judgment. Fed. R. Civ. P. 12(d).

B.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving

14

party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim.  Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

"When a defendant raises a qualified immunity defense, 'whether the conduct of which the plaintiff complains violated clearly established law' is an 'essentially legal question.'" Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990). Although the Court views the evidence in a light most favorable to the nonmovant, "the plaintiff has the burden to come forward with summary judgment evidence sufficient to create a genuine issue as to whether the defendant's conduct was objectively unreasonable in light of clearly established law." Id.

The plaintiff's final two theories of Dimitri's liability under Section 1983 are: 1) Dimitri lacked probable cause to cite Cruz for the traffic violations; and 2) Dimitri conspired with Fulton to deprive Cruz of due process. The Court turns to each theory.

1.

A defendant has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint in liberty. See Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 278 (5th Cir. 1992). "An arrest or detention may be unlawful if it is accomplished without due process of law as required by the Constitution." Id. "Police officers are, therefore, required under the Fourth Amendment to make a determination of probable cause before any significant pretrial restraint or liberty." Id. "A police officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." Id.

"Probable cause is a defense to a § 1983 claim based on an alleged false arrest." Pfannstiel, 918 F.2d at 1183. "Even if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense." Id. "A defendant is entitled to qualified immunity unless, 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue . . . ." Id. (quoting Malley v. Briggs, 475 U.S. 334, 341 (1986)). Here, the question the Court must answer is

whether any reasonably competent officer would have found probable cause to issue Cruz the traffic citations.[3]

Attached to his motion, Dimitri submits a sworn affidavit in which he recounts his version of the events surrounding the incident in Cruz's driveway. After he arrived at the scene, Dimitri says, he first interviewed Tracy Fulton, who told him that Cruz had struck his vehicle on Earhart Boulevard. According to Dimitri, Fulton explained that he followed Cruz home and approached Cruz in his driveway to confront him about the hit-and-run. Fulton claimed that Cruz tried to kick him; in turn, Fulton punched Cruz; then, Cruz armed himself with a machete and Fulton armed himself with his service handgun. Dimitri claims that he inspected the two vehicles and observed a paint transfer, indicating there had been at least a minor collision. Dimitri then interviewed Cruz and his family, who told him they had not been involved in an accident. He states, "Based on the physical evidence, it was my good-faith belief that Tracy Fulton's version of the events was sufficiently confirmed. Based on my observations, I concluded that Cruz was the striking vehicle."

---

[3] The Court notes that Cruz was never formally arrested or restrained. He did, however, face prosecution for the traffic charges, although he was acquitted on all of them. Because the Court finds that Dimitri was not objectively unreasonable in issuing the citations, the Court need not determine whether Cruz had a constitutional right to be free from a traffic citation unsupported by probable cause.

Cruz disputes some of these facts. He attaches Dimitri's deposition testimony to his opposition papers. Dimitri admitted during deposition that he did not interview Cruz personally because he was informed that Cruz did not speak English. Instead, Dimitri concedes that he only interviewed Cruz's 13 year old daughter because she was the only witness who spoke fluent English. He also admitted that he knew others were in the car but did not interview them before making his decision to cite Cruz. Cruz contends that, had Dimitri conducted a more thorough investigation by calling a translator to interview him and his other family members, Dimitri would not have had probable cause to issue Cruz the traffic citations.

The undisputed facts are as follows: Dimitri arrived at the scene to investigate a reported traffic accident – the hit-and-run. Other officers, including members of the Public Integrity Bureau, arrived shortly after to investigate the criminal incident involving Fulton's alleged misconduct. When Dimitri arrived, Fulton claimed that Cruz had hit his car and fled the scene. Dimitri saw matching paint transfers on the vehicles consistent with Fulton's story. Dimitri spoke to Cruz's 13 year old daughter, who denied that she and her family were involved in an accident. Dimitri issued Cruz traffic citations for hit-and-run, driving without a license, and careless operation of a vehicle.

Even viewing the facts in a light most favorable to the plaintiff, there was sufficient evidence to support Dimitri's finding of probable cause to issue the citations. Should Dimitri have interviewed all of the witnesses? Probably. But he was not objectively unreasonable in failing to do so, particularly in light of his inability to directly communicate with the non-English speaking witnesses. Nor was it objectively unreasonable for him to conclude that a traffic accident had occurred based on the physical evidence of the paint transfers. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Brady, 58 F.3d at 174. Dimitri may have made hurried assumptions based on incomplete information, but his actions were not objectively unreasonable on these circumstances. Dimitri is entitled to qualified immunity for issuing Cruz the traffic citations.

2.

Cruz's final claim against Dimitri is that the officer engaged in a conspiracy with Tracy Fulton to deprive Cruz of due process. Conspiracy is a recognized claim under sections 1983 and 1985(3). See Pfannstiel, 918 F.2d at 1187. According to the plaintiff, Dimitri and Fulton conspired to issue Cruz traffic violations to give the city attorneys leverage to later obtain a release of liability for Fulton's actions in exchange for dismissal of the traffic charges.

In a conspiracy claim as alleged here, the Court "must look first to determine the objective reasonableness of the state action which is alleged to have caused harm to the plaintiff." Id. "Only if that state action is determined not be to objectively reasonable should we look to whether the officer's actions were taken pursuant to a conspiracy." Id.

Here, the state action that allegedly harmed the plaintiff is Dimitri's issuance of traffic citations. The Court has determined that Dimitri was not objectively unreasonable in finding probable cause to issue the citations. Accordingly, the inquiry ends; Cruz's conspiracy claim fails.

Paul Dimitri's motion for summary judgment and dismissal on the basis of qualified immunity is granted.

## II. The City of New Orleans

Like Dimitri, the City of New Orleans moves for partial summary judgment and partial dismissal under Rule 12(c).[4]

Cruz asserts claims against the City of New Orleans under both direct and indirect theories of liability. Cruz contends that the City is directly liable on two grounds: First, he maintains that the City directly violated his constitutional rights under section 1983 for failing to properly train New Orleans police officers. Second, he asserts an action under State law directly

---

[4] Also like Dimitri, the City does not delineate the grounds for its motions.

20

against the City for negligent hiring practices. Indirectly, Cruz invokes the doctrine of respondeat superior, claiming that the City is responsible for the tortious actions of its employees, Fulton and Dimitri.

As before, the Court first considers the City's contention that Cruz has failed to adequately plead certain claims under Rule 12(c). As for the remaining claims, the Court construes the City's motion as one for summary judgment. The Court applies the same standards previously noted.

A.

The City contends that the plaintiff has failed to plead sufficient facts to support a section 1983 claim for inadequate training of police officers. In <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978), the United States Supreme Court held that a municipality can be found liable under Section 1983 only where the municipality *itself* causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under section 1983. <u>Id.</u>; <u>see</u> <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." <u>Harris</u>, 489 U.S. at 385 (citations and quotations omitted).

Liability under section 1983 attaches where a deprivation of a right protected by the Constitution or by federal law is caused

21

by a persistent, widespread practice of city officials or employers. See Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003). "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Harris, 489 U.S. at 387. "[P]roof of deliberate indifference, generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" Burge, 336 F.3d at 370 (quoting Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001)). "Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." Id.

The City of New Orleans correctly points to a complete absence of any factual allegations in the plaintiff's complaint showing that the City or City officials showed a deliberate indifference to the rights of people with whom the New Orleans police came into contact. Nor does the plaintiff plead facts showing a pattern of similar violations arising from inadequate training. Aside from the boilerplate assertion that New Orleans police officers are inadequately trained, the plaintiff does not identify any particular policy or persistent practice obviously likely to

result in a constitutional violation. Twombly is an express rejection of boilerplate. Cruz has failed to state claim for a section 1983 violation against the City of New Orleans.

The remainder of the plaintiff's claims against the City arise under State law. Because the parties rely on evidence outside of the pleadings, the Court construes the remaining portion of the City's motion as one for summary judgment. Fed. R. Civ. P. 12(d).

B.

The Court first addresses the plaintiff's claims against the City under a theory of respondeat superior or vicarious liability.

Respondeat superior is codified in Louisiana Civil Code article 2320. The (somewhat outdated) statute provides: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. Critically, an employer is only responsible for its employee's actions that are within the scope of employment. See Baumeister v. Plunkett, 95-227 (La. 5/21/96); 673 So. 2d 994. "[F]or an employer to be vicariously liable for the tortious acts of its employee the tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal

considerations entirely extraneous of the employer's interest." Id. at 996 (alterations in original).

The Louisiana Supreme Court has identified the following factors to guide the respondeat superior analysis: 1) whether the tortious act was primarily employment rooted; 2) whether the violence was reasonably incidental to the performance of the employee's duties; 3) whether the act occurred on the employer's premises; and 4) whether it occurred during the hours of employment. Id. at 996-97. "The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment." Id. at 997.

As Officer Dimitri is entitled to qualified immunity, he has not engaged in tortious conduct for which the City may be liable. Accordingly, the only issue is whether the City is vicariously liable for the tortious conduct of Tracy Fulton. Viewing the facts in a light most favorable to Cruz, the Court must determine whether a genuine dispute exists as to whether Fulton was acting within the scope of his employment of the NOPD during the encounter with Cruz.

The record establishes that Fulton was off duty at the time of the incident. He was dressed in plain clothes and never identified himself to Cruz or his family as a police officer. Fulton was driving his personal vehicle, not a police vehicle. The incident did not occur during hours of employment, and it did not

occur at the employer's premises or while Fulton was on patrol.
Nor is there any evidence (or facts pled) tending to show that the
violence was incidental to the performance of Fulton's duties as
a police officer. At best, the record indicates that Fulton
overreacted when the plaintiff may have bumped his vehicle and
pursued Cruz to settle a personal score.

Fulton's conduct has only two apparent connections to his
employment with the NOPD. First, Fulton called a private police
line to report the alleged hit-and-run rather than calling 911.
Directly following the accident, Fulton telephoned the Second
District Dispatcher and then the Police Command Center and
requested that the dispatcher broadcast "Officer Needs
Assistance." Second, Fulton armed himself with his service pistol
during the encounter with Cruz.

The mere facts the Fulton drew his service pistol and
contacted the police dispatcher directly are insufficient to
establish that his tortious conduct was primarily employment
rooted. There is no connection in time, place, or causation to
Fulton's duties as a New Orleans police officer. Instead, Fulton's
conduct was instituted by purely personal considerations entirely
extraneous of the NOPD's interests. The plaintiff points to NOPD
policy instructing off-duty officers that they are "not relieved
from the responsibility of taking appropriate police action on any
serious police matter coming to their attention at any time." But

25

this was not a serious police matter in which Fulton had a duty to intervene. Rather, Fulton was personally involved in a minor traffic accident to which he aggressively overreacted.

The plaintiff insists that Fulton was "acting under color of state law" during the incident. But the Court is not presently tasked with considering whether Fulton was acting under color of state law and thus potentially liable under section 1983.[5] Rather, the proper analysis is whether Fulton was acting within the scope of his employment with the NOPD. On this record, there is simply no evidence to suggest that Fulton's actions were reasonably incidental to the performance of his duties as a police officer. Accordingly, the City's motion for summary judgment on the plaintiff's respondeat superior claims is granted.

C.

The plaintiff's only remaining claim against the City of New Orleans is a State law claim based on the City's alleged negligence in hiring, retaining, or supervising Fulton as a police officer. Negligent hiring is a different claim than respondeat superior. It is a theory of direct liability governed by Louisiana's duty-risk

---

[5] "Whether or not an officer is 'on duty' is not definitive regarding whether an officer was acting 'under color of law.'" Cobb v. Jones, 2015 WL 5794027 (W.D. La. Oct. 2, 2015)(citing United States v. Tarpley, 945 F.2d 806 (5th Cir. 1991)). Whether an officer is acting under color of state law is a different analysis from whether he was acting within the scope of his employment.

analysis. <u>Griffin v. Kmart Corp.</u>, 00-1334 (La. App. 5 Cir. 11/28/00); 776 So.2d 1226, 1231. The duty-risk analysis requires proof of five essential elements: "duty, breach of duty, cause-in-fact, scope of the liability of protection, and damages." <u>Id.</u> An employer who hires and trains an employee who will be working with and handling guns owes a duty to exercise reasonable care in the selection of that employee. <u>Id.</u>

Incidental to his employment as a New Orleans police officer, Fulton was carrying his service pistol which he pointed at Cruz and his 13 year old daughter (ultimately as a result of a minor traffic incident). Regardless of whether Fulton was acting within the scope of his employment during the incident, the City of New Orleans has a duty to carefully select and train the employees it arms with dangerous weapons. The record indicates that Fulton has been the subject of a long list of disciplinary actions instituted by the NOPD. The charges brought against him span a decade and include allegations of dishonesty and carelessness, and they tend to show a propensity for violence. Why was he continued as an NOPD law enforcement officer? Reasonable jurors could deliberate the existence of sufficient evidence for a claim of negligent hiring.[6]

---

[6] The Court also notes that the parties' lackluster briefing fails to adequately address the issue of negligent hiring for proper resolution of the claim at this stage.

The City's motion for summary judgment on the plaintiff's State law theory of negligent hiring is denied.

IT IS ORDERED that Paul Dimitri's motion for dismissal and partial summary judgment on the basis of qualified immunity is GRANTED.

IT IS FURTHER ORDERED that the City of New Orleans' motion for dismissal and summary judgment is GRANTED except as to the plaintiff's State law claim for negligent hiring of Tracy Fulton.

New Orleans, Louisiana, August 31, 2016

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE