UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELADIO CRUZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, MELISSA CRUZ | NO. 2:14-cv-02015 |
| VERSUS | JUDGE: FELDMAN |
| TRACY FULTON, PAUL DIMITRI, AND THE CITY OF NEW ORLEANS, DEPARTMENT OF POLICE | MAGISTRATE: VAN MEERVELD |

**RESPONSE TO SHOW CAUSE ORDER OF LOUIS R. KOERNER, JR.**

MAY IT PLEASE THE COURT:

### I. NATURE OF THE MATTER RAISED BY THE COURT

The Court was appropriately concerned about the complaint by Eric Hessler, counsel for Tracy Fulton, that he did not receive paper copies of the exhibits that were going to be introduced by both parties at the trial of this matter on October 3, 2016.

### II. SUMMARY OF THE ARGUMENT

1. The client, Eladio Cruz, et al, was totally without fault, was ready to go to trial and justifiably relied on counsel to comply with the pretrial and trial orders of the Court. Accordingly, dismissal of this case is inappropriate.

2. The application of 28 U.S.C. § 1927 is restricted to intentional actions, primarily by counsel, and is inapplicable to the failure to provide paper copies of exhibits previously provided and provided in digital form by plaintiff's counsel.

3. The pretrial and trial orders of this Court use different terminology with regard to the bench book to be provided to this Court, which is unequivocally in paper and in hard copy, as opposed to providing copies of exhibits to opposing counsel in that there is no specific requirement that exhibits previously provided be provided again in a particular format such as paper or electronic form.

1

### III. EXHIBITS PROVIDED

The following sworn declarations, all of which are dated October 11, 2016, are attached to this response:

    a.    Louis R. Koerner, Jr.

    b.    Anne M. Parr

    c.    Laura Savoie

    d.    Chelsea D. Dazet

### IV. WHAT HAPPENED

This issue would never have happened had the undersigned been in New Orleans to direct the preparation of the bench book and exhibits. Although it is not absolutely required by the orders of this Court, it is customary to prepare a bench book, a set of exhibits to offer into evidence and to show to the jury, a set of exhibits to give to each opposing counsel, and a set of exhibits to be maintained at the table of plaintiff's counsel.

This is particularly true when the total number of exhibits is less than 300 pages, a relatively trivial amount given the copying capacity of Koerner's office.

Koerner's trip to Dominica was far from uneventful. Not only were there Internet problems, but falls with resulting injuries, and threatening tropical weather. Koerner was able to proof and file jury charges and the jurisdictional response, but the exhibits were beyond his capacity as working at kitchen tables in rain forests or coffee tables on the shore of the Atlantic.

Consequently, preparation of the exhibits was delegated to Koerner's office and supervision was delegated to co-counsel unfamiliar with the customs and procedures of federal court that Koerner has lived with for almost 50 years. Unsurprisingly, there were glitches caused by misunderstandings of that which was not clearly articulated in the pretrial and trial orders.

## CONCLUSION

Good faith mistakes, even dumb mistakes, are not a proper subject for sanctions of any kind, certainly not contempt, not 28 U.S.C. § 1927 sanctions, or dismissal of the meritorious case of innocent and wronged clients.

The show cause order should be considered satisfied. Everyone involved has soul searched and will do better in the future.

>Respectfully submitted,
>
>KOERNER LAW FIRM
>/s/ Louis R. Koerner, Jr.
>Louis R. Koerner, Jr.
>Louisiana Bar 7817
>1204 Jackson Avenue
>New Orleans, Louisiana 70130
>P.O. Box 4297
>Houma, Louisiana 70361
>Telephone: 985-580-0350
>New Orleans: 504-581-9569
>Telecopier: 504-324-1798
>(Cellular) 504-405-1411
>e-mail: koerner@koerner-law.com
>URL: http:/www.koerner-law.com
>Attorneys for Eladio Cruz

## CERTIFICATE

I hereby certify that a copy of the foregoing pleading has been served upon all interested counsel by ECF filing on October 11, 2016.

>/s/Louis R. Koerner, Jr.
>Louis R. Koerner, Jr.

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELADIO CRUZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, MELISSA CRUZ | NO. 2:14-cv-02015 |
| VERSUS | JUDGE: FELDMAN |
| TRACY FULTON, PAUL DIMITRI, AND THE CITY OF NEW ORLEANS, DEPARTMENT OF POLICE | MAGISTRATE: SHUSHAN |

### UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF LOUIS R. KOERNER, JR.

1. I, Louis R. Koerner, Jr., declare under penalty of perjury under the laws of the United States of America, that the following is true and correct:

2. I was asked by Adam Lambert to serve as co-counsel in this case.

3. I departed on 9/20/16 for a vacation to the island of Dominica and was scheduled to return and did return on 9/28/16.

4. Although I expected to do some work each day while on my trip, I experienced technical glitches wherein I did not have reliable Internet connections for email correspondence or for Westlaw. Even telephone calls were often difficult. On account of my prior experience with the ECF, I was expected by my co-counsel to finalize, approve, and file major pleadings.

5. In addition to communications problems, I fell twice at Trafalgar Falls and once on the way to Boeri Lake, injuring my leg and arm and hitting my head. None of these were serious enough to require formal medical attention, but I did need to slow down. On the last day of my trip, Tropical Storm Matthew (later upgraded to a hurricane) caused power disruptions and uncertainties as to whether my flight would be cancelled.

6. I was aware that my legal administrator, Anne Parr, had read through the scheduling order and had calendared important deadlines.

1

7. Adam Lambert and Chelsea Dazet sent numerous emails concerning exhibits.

8. Adam Lambert sent me a link to a Dropbox folder entitled "CRUZ EVIDENCE."

9. After a discussion with the Court's law clerk in which I was told that the deadline for the bench book would be extended to 9/27, I received an email that was sent by my legal administrator at 9:30 p.m. on Monday 9/26 to Laura and Sara in my office which stated:

> **I just got off the phone with Adam. Originally, the briefing to the court on issues of law and jurisdiction was due today. The ECF notice sent out today indicates that it is now due tomorrow.**
>
> **I am drafting an index for the bench book so that you (Laura, Marina, Sara) will have an outline.**
>
> **We have audio files that need to be burned in addition to the printing.**
>
> **Anne**

10. I was thus assured that the bench book would be timely delivered to the Court and that Anne Parr was in contact with Adam Lambert concerning exhibits and deadlines.

11. I anticipated Bates stamping and printing exhibits for use at trial upon my return, Thursday 9/29.

12. Although phone calls were few and far between, I did speak to Adam Lambert at some point during my trip, during which conversation he briefly mentioned digital exhibits.

13. I instructed my office staff to print exhibits for Mr. Hessler and to provide an itemized bill for copies after learning that he preferred to have our office do the printing.

14. It is my understanding that Mr. Hessler had access to all of the exhibits including audio exhibits via Dropbox and that he had been already provided with copies of all exhibits during discovery and prior to the pretrial conference. Had I been present in New Orleans, I may perhaps have handled matters differently, but I delegated all of this to co-counsel and to my staff and thought everyone did the best that they could under stressful circumstances.

October 11, 2016	KOERNER LAW FIRM
/s/ Louis R. Koerner, Jr.
Louis R. Koerner, Jr.

## CERTIFICATE

I hereby certify that a copy of the foregoing pleading has been served upon all interested counsel by ECF filing on October 11, 2016.

/s/Louis R. Koerner, Jr.
Louis R. Koerner, Jr.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELADIO CRUZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, MELISSA CRUZ | NO. 2:14-cv-02015 |
| VERSUS | JUDGE: FELDMAN |
| TRACY FULTON, PAUL DIMITRI, AND THE CITY OF NEW ORLEANS, DEPARTMENT OF POLICE | MAGISTRATE: SHUSHAN |

UNSWORN DECLARATION UNDER PENALTY
OF PERJURY OF ANNE M. PARR

1. I, Anne M. Parr, declare under penalty of perjury under the laws of the United States of America, that the following is true and correct:

2. I am over the age of 18 and have personal knowledge of the facts stated below.

3. I have been employed as the legal administrator of Koerner Law Firm since July 1, 2009.

4. Prior to his departure on a trip scheduled from 9/20/16 to 9/28/16, Mr. Koerner and I reviewed matters of importance, including deadlines in all current cases.

5. With regard to Cruz vs Fulton, my instructions were to "do whatever Adam says," because, as Mr. Koerner pointed out, Adam Lambert is a good lawyer with good instincts.

6. On 9/23/16, Adam Lambert sent an email stating in part:

> **Exhibits and bench book. I will start getting the exhibits together and Louis is going to put the bench book together when he returns.**

7. This seemed to me to be consistent with the scheduling order dated 3/3/16 (number 10(d)) requiring :

> . . . a bench book of tabbed exhibits delivered to the Court . . . .

1

8. I worked earnestly to ensure that the bench book was properly assembled by our office staff and delivered to the Court even before Mr. Koerner's return, in order to meet the deadlines and requirements of the Court.

9. Adam Lambert telephoned me on 9/26/16 and again on 9/27/16 during which conversations he stated that we would provide electronic copies of exhibits to opposing counsel.

10. This seemed to me to be consistent with the scheduling order dated 3/3/16 (number 10(d)) regarding trial exhibits:

> **In addition to the formal list of exhibits, counsel shall prepare copies for opposing counsel . . . .**

11. I worked earnestly to ensure that our office staff prepared electronic copies of exhibits for Mr. Hessler's office and that our New Orleans office communicated with Mr. Hessler's office regarding exhibits, even knowing that documents had already been exchanged during the discovery/pre-trial period.

12. It is not uncommon for our office to exchange exhibits via email, Dropbox or USB jump drive when the scheduling order does not mandate the printing of paper copies.

13. Nowhere in the scheduling order can I find any instruction requiring counsel for plaintiffs to assemble a tabbed bench book for opposing counsel or any instruction requiring **paper copies** of exhibits to be printed for opposing counsel.

14. Mr. Hessler did not call me at any time to request printed copies of exhibits.

15. The exhibits to be used during trial (projected on the screen) were to be Bates stamped and printed upon Mr. Koerner's return to work on Thursday 9/29.

16. Communication between myself and Mr. Koerner was unforeseeably limited while he was on vacation.

*[signature]*

_____
ANNE M. PARR

October 11, 2016

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELADIO CRUZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, MELISSA CRUZ | NO. 2:14-cv-02015 |
| VERSUS | JUDGE: FELDMAN |
| TRACY FULTON, PAUL DIMITRI, AND THE CITY OF NEW ORLEANS, DEPARTMENT OF POLICE | MAGISTRATE: SHUSHAN |

UNSWORN DECLARATION UNDER PENALTY OF PERJURY
OF LAURA SAVOIE

I, Laura Savoie, declare that:

1. I first became aware of the deadline for the bench book when I arrived to work on Tuesday, September 27, 2016 at 8:00am. After reading through all of the emails I promptly called Anne Parr to find out how many bench books and extra sets of exhibits we needed to print, because I did not know how many lawyers were on the case. As I was on the phone with her she informed me that Mr. Lambert was also calling her and that she would ask him and get back with me. Not long after we hung up I received a call back from her saying that Mr. Lambert told her we only needed one bench book, which I commented to Ms. Parr as being odd. However, being that Mr. Lambert is the attorney I did as I was told and began to assemble one bench book for Judge Feldman.
2. On Tuesday, September 27, 2016, Ms. Parr emailed me the cover for the bench book and asked me to check to see if Isaka R. Williams was supposed to be listed as counsel. I promptly called Mr. Lambert who informed me that she was the attorney for the State and was not to be added to the cover. This was the only time I personally spoke with Mr. Lambert during this week. Ms. Dazet contacted me once by phone to see how everything was going and I informed her that it was moving along and that I had to print the color pictures at Office Depot for the Court's bench book and would be leaving soon to pick them up. This was the only phone conversation I had with Ms. Dazet during this week.
3. Shortly after the bench book was finished and ready for me to bring it down to the courthouse. Once I put the binder in the hands of someone in the judge's chambers I sent out an email to everyone letting them know the Judge had the bench book.
4. On Wednesday, September 28, 2016 I received a phone call from Rhonda at Mr. Hessler's office asking about their copy of the bench book. Due to the fact that Mr. Lambert told Ms. Parr to only print one copy I was a bit blindsided by this request so I told her I would give her a call back once I checked with Ms. Parr. I

1

immediately called Ms. Parr and told her about this request to which she informed me that from her conversation with Mr. Lambert she was under the impression that all counsel wanted digital copies of the exhibits. I then called Rhonda back to tell her that I could have a jump drive ready for them the next day (Thursday, September 29, 2016) before noon. Rhonda did not seem sure about this however she never verbally asked me for paper copies of the exhibits. She did ask me about how many pages it was for when she printed their own copy. She stated that she would let Mr. Hessler know. Rhonda also mentioned for me to give her a call when I arrived to drop off the jump drive due to limited parking and she would run down to get the jump drive from me. After I had left for the day I received an email from Ms. Parr that Mr. Hessler had also been sent the Dropbox link but to still make him a jump drive and to go drop it off.

5. I spoke with Ms. Parr when I arrived to work on Thursday, September 29, 2016 when she informed me that Mr. Hessler did indeed want us to print paper copies of the exhibits. I quickly printed everything out and had it ready to go shortly after, along with a jump drive. I arrived to Mr. Hessler's office at 11:15 and called Rhonda to run down to pick up the paper copy and jump drive of exhibits. No one answered the phone. I preceded to call the office six more times and left a message on the 4th call. I was able to find a parking space and went around to the front of the office building and rang the doorbell several times with no answers. I then tried to get in touch with Mr. Koener and Ms. Parr. Once I was able to get in touch with Ms. Parr, she told me to go to lunch and on my way back to the office try a second time to drop off the exhibits. While at lunch I received a return call from Mr. Koerner informing me that Mr. Hessler and Rhonda had both been out of the office and that Mr. Hassler would stop by our office to pick up the exhibits at around one, to which I reminded Mr. Koerner that I would not be back to the office till after one. He stated that that would not be a problem and he would let Mr. Hessler know. When I arrived back to the office no one came to pick up the exhibits that day, nor the next. It is still in fact sitting in my office.

_Laura M. Savoie_
Laura M. Savoie

___10/11/2016___
Date

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELADIO CRUZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, MELISSA CRUZ | NO. 2:14-cv-02015 |
| VERSUS | JUDGE: FELDMAN |
| TRACY FULTON, PAUL DIMITRI, AND THE CITY OF NEW ORLEANS, DEPARTMENT OF POLICE | MAGISTRATE: SHUSHAN |

**DECLARATION OF CHELSEA D. DAZET, ESQ.**

**NOW INTO COURT** comes Chelsea D. Dazet, Esq., co-counsel for plaintiffs, who makes the following declaration pursuant to 28 U.S.C. § 1746:

1. The plaintiffs originally retained Mr. Adam Lambert for representation. Mr. Lambert invited me (with consent of the client) to assist him in handling the case in a second-chair capacity. I have primarily practiced in local district courts since being admitted to the Louisiana bar in October of 2011. When it became evident that the Cruz matter was proceeding in federal court, Mr. Louis Koerner was also added to the legal team to assist in litigating the case due to his experience in federal court. Additionally, I became admitted to practice in the Eastern District last year solely for the purposes of being able to continue to assist Mr. Lambert and Mr. Koerner with this case.

2. During the course of our representation of the plaintiffs, it is our regular practice to divide work and undertake specific tasks according to experience and skill level.

3. It was agreed by all co-counsel that Mr. Lambert was tasked with gathering and organizing the exhibits for the bench book into a Dropbox folder to prepare for Mr. Koerner and his office to assemble for trial. I spoke with Mr. Lambert on Friday,

September 23, 2016, at which time he told me he would be working on gathering and organizing the exhibits over the weekend.

4. I was not tasked with gathering and organizing the exhibits, the preparation of or the distribution of the bench book, as I was assigned numerous other responsibilities for the approaching trial.

5. However, on Monday, September 26, 2016, after the close of business, Mr. Lambert contacted me and requested that I review the exhibits for the bench book in the Dropbox folder he created to double check everything was included. Mr. Lambert informed me that the Court had rejected Mr. Koerner's proposal to wait for his return from the Domenica to receive the bench book, and that it now must be delivered to the chambers of the judge by Tuesday, September 27, 2016. Mr. Lambert requested that I send out an email to all co-counsel, including Mr. Koerner's staff, once I was finished looking over the exhibits and making any necessary changes. I inquired if Mr. Koerner's office would also be printing us a copy of the book, and Mr. Lambert responded by stating that Mr. Koerner would be taking care of all of that when he got back. Mr. Lambert further stated that Mr. Koerner's office knew they were to get the bench book to the judge's chambers by tomorrow (Tuesday, September 27, 2016), and they were just waiting on the finalized evidence. Based on this conversation with Mr. Lambert, I was under the impression that only one printed book was due to the judge's chambers on Tuesday, September 27, 2016, and that Mr. Koerner's office would be in charge of assembling and delivering it.

6. After hanging up with Mr. Lambert that evening, I made minor changes to the exhibits in the Dropbox, such as substituting black and white photographs for color ones and adding one document I noticed was left out. I then emailed all co-counsel (and staff) regarding my changes, and I requested that Mr. Koerner's office confirm once the book was delivered to the judge's chambers the following day.

7. Shortly thereafter, Anne Parr, Mr. Koerner's assistant, sent out an email with a timeline of the remaining deadlines for the approaching trial. I noticed that the Tuesday, September 27, 2016 deadline of delivering the bench book to the judge's chambers which I learned of in my earlier conversation with Mr. Lambert was not included. Accordingly, I replied to all and said: "Also add to Tuesday: Bench book with tabbed exhibits must be delivered to chambers."

8. On Tuesday, September 27, 2016, I spoke with Laura Savoie, Mr. Koerner's file clerk. At that time, Ms. Savoie informed me that she was having the color pictures for the court's bench book printed at Office Depot. She stated she would be picking them up shortly, delivering the bench book to the judge's chambers, and an email would follow with confirmation of delivery.

9. Not long after our conversation, Ms. Savoie sent all co-counsel and co-workers an email on Tuesday, September 27, 2016, at 3:07 P.M. confirming that the bench book was complete and dropped off at the judge's chambers.

10. On Wednesday, September 28, 2016, while at my office in Covington, I received a phone call from Mr. Eric Hessler, attorney for the defendant, Tracy Fulton. Mr. Hessler informed me that he had just spoken with Mr. Koerner's office regarding

his copy of the bench book and Mr. Koerner's staff stated they were in the process of getting everything together for him on a jump drive to be provided to him tomorrow (Thursday, September 29, 2016). Mr. Hessler stated he needed something immediately to begin his trial preparation, and that he preferred for it to be printed. I told Mr. Hessler that I was not in charge of handling the exhibits / bench book, but I would contact Mr. Lambert and/or Mr. Koerner's office to see if something could be done sooner. As Mr. Hessler and I also discussed, I forwarded him the *Table of Contents* for the bench book and added him to the Dropbox file (with verbal assistance from Mr. Lambert) so he could instantly access all of the exhibits which I believed were included in the bench book.

11. After speaking with Mr. Hessler, I called Mr. Lambert to discuss Mr. Hessler's request for the printed copy of the bench book. Mr. Lambert walked me through the process of adding Mr. Hessler to the Dropbox file, and stated he would immediately call Mr. Koerner (who was out of the country) and/or his office to see exactly what was going on with the book Mr. Hessler requested.

12. Shortly after speaking to Mr. Lambert, I received an email from the Court with notice that the trial had been continued and a request for a memorandum on contempt (Doc. 121).

13. I had no intent to disobey any Court order or to cause any harm to this Honorable Court, the defendant, Mr. Tracy Fulton, or his counsel, Mr. Eric Hessler, with any of my above actions. It is further my belief that Mr. Koerner (and staff) and Mr. Lambert also did not act willfully, with improper motive, bad faith, recklessness,

5

      or any of the like, in the error of failing to timely deliver a printed bench book to Mr. Hessler.

14.     I also spoke with Mr. Hessler on Saturday, October 8, 2016, and he acknowledged that he did not believe the actions of Plaintiffs' counsel were intentional.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 11, 2016.

                                                  /s/ Chelsea D. Dazet
                                                Chelsea D. Dazet, Esq.